# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
## LYNCHBURG DIVISION

| | |
|---|---|
| SHARESE S. SAUNDERS,<br>         *Plaintiff*,<br><br>    v.<br><br>CAROLYN W. COLVIN[1], Acting Commissioner of Social Security,<br>         *Defendant*. | CASE NO. 6:12–cv–00071<br><br>MEMORANDUM OPINION<br><br>JUDGE NORMAN K. MOON |

  This matter is before the Court on the parties' cross Motions for Summary Judgment (docket nos. 11 and 16), the Report & Recommendation of United States Magistrate Judge Robert S. Ballou (docket no. 21, hereinafter "R&R"), and Plaintiff's Objections to the R&R (docket no. 22). Pursuant to Standing Order 2011-17 and 28 U.S.C. § 636(b)(1)(B), the Court referred this matter to U.S. Magistrate Judge Ballou for proposed findings of fact and a recommended disposition. Judge Ballou filed his R&R, advising this Court to deny Plaintiff's Motion for Summary Judgment, and grant the Commissioner's Motion for Summary Judgment. Plaintiff timely filed her Objections, obligating the Court to undertake a de novo review of those portions of the R&R to which objections were made. *See* 28 U.S.C. § 636(b)(1)(B); *Farmer v. McBride*, 177 F. App'x 327, 330 (4th Cir. 2006). For the following reasons, I will overrule Plaintiff's Objections and adopt Judge Ballou's R&R in full.

## I. BACKGROUND

  On April 27, 2010, Plaintiff Sharese S. Saunders ("Plaintiff") protectively filed an application for supplemental security income ("SSI") payments and disability insurance benefits

---

[1] Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, I substitute Carolyn W. Colvin for Michael J. Astrue as the defendant in this suit.

1

("DIB") under the Social Security Act (the "Act"), 42 U.S.C. §§ 401–433, 1381–1383f. To receive SSI benefits, Plaintiff must show her disability began on or before the date she applied for benefits, and has lasted or could be expected to last for at least twelve continuous months. 42 U.S.C. §§ 1382(a), 1383(a)(1); 20 C.F.R. §§ 416.202(a), 416.905(a). Plaintiff must show her disability began before the date she was or will be last insured (here, December 31, 2014), and that the disability existed for twelve continuous months to receive DIB. 42 U.S.C. §§ 423(a)(1)(A), (c)(1)(B), (d)(1)(A); 20 C.F.R. §§ 404.101(a), 404.131(a).

Plaintiff was born on July 12, 1970, and was considered a younger person under the Act on her alleged onset date. *See* Administrative Record (hereinafter "R."), at 130, 194; 20 C.F.R. § 404.1563(c). She attended school through the eleventh grade and performed various types of unskilled, light work up until March 2010. R. 24, 32–33, 146, 200–01. Most recently, from 2006 to March 2010, Plaintiff worked as a store cashier. R. 24, 32–33, 118–21, 146. Before that, Plaintiff worked from 2005 to 2006 as a flagger, and from 1997 to 1999 as a kitchen helper/bus aid. R. 32–33, 118–21, 144–47, 168, 200–01.

Plaintiff claims her disability began on March 25, 2010, when she was admitted to the hospital for abdominal and lower back pain. She remained in the hospital for seven weeks and underwent an initial surgery to remove a cyst from her left ovary, and later a colostomy and a procedure to close the colostomy, both related to a colon perforation during the initial surgery. R. 10, 14 241, 255–58. Plaintiff alleges she also suffered from disabling depression. R. 130–44. Plaintiff ultimately requested a closed period of benefits beginning on March 25, 2010 and ending on April 20, 2011, when Plaintiff was able to return to work full time. R. 26–27. During the relevant period of disability, Plaintiff has said she was able to cook, clean, shower, and dress herself. R. 26. This Court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## A.  The ALJ's Decision

The state agency denied Plaintiff's application at the initial and reconsideration levels of administrative review, and on May 11, 2011, Administrative Law Judge ("ALJ") Marc Mates held a hearing to consider Plaintiff's disability claim.  R. 10.  Counsel representing Plaintiff and a vocational expert both appeared at the hearing.  R. 10.

Determining disability, and thus eligibility for Social Security benefits, involves a five-step inquiry.  *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002).  In this process, the Commissioner asks whether: (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a medical impairment (or combination of impairments) that are severe; (3) the claimant's medical impairment meets or exceeds the severity of one of the impairments listed in Appendix I of 20 C.F.R. Part 404, Subpart P, Appendix 1, and the impairment meets the duration requirement in 20 C.F.R. §§ 404.1509 and 416.909; (4) the claimant is able to perform her past relevant work; and (5) the claimant can perform other specific types of work.  *Johnson v. Barnhart*, 434 F.3d 650, 653 n.1 (4th Cir. 2005) (citing 20 C.F.R. § 404.1520).

The claimant has the burden of production and proof in Steps 1–4.  *See Hunter v. Sullivan,* 993 F.2d 31, 35 (4th Cir. 1992) (per curiam).  If the claimant meets that burden, at Step 5 the burden shifts to the Commissioner "to produce evidence that other jobs exist in the national economy that the claimant can perform considering h[er] age, education, and work experience." *Id.*  If a determination of disability can be made at any step, the Commissioner need not analyze subsequent steps. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

The ALJ found Plaintiff suffers from a medically determinable impairment of "status post bowel perforation and colostomy."  R. 12.  He also found she meets the insured status requirements of the Act through December 31, 2014, and did not engage in substantial gainful

3

activity during the requested closed period. R. 12. However, the ALJ found Plaintiff's impairment did not "significantly limit [her] ability to perform basic work-related activities for 12 consecutive months; therefore, [Plaintiff] does not have a severe impairment or combination of impairments" under the Act. R. 12–13.

Although he found Plaintiff's "medically determinable impairment could reasonably be expected to produce the alleged symptoms," the ALJ found "the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms" were not entirely credible, mostly because they were contradicted by multiple sources of objective medical evidence.[2] R. 13–14. That evidence showed Plaintiff "was released to full activity within six months of her alleged onset date," and there was "no evidence to suggest that the limitations imposed by her impairments lasted for the requisite 12 months." R. 14.

## B. The Summary Judgment Motions

Plaintiff argued in her motion for summary judgment that the ALJ improperly evaluated her medical records and complaints of pain in finding she was not disabled or that her impairments were not severe for the entire claimed period. Plaintiff pointed out how difficult her surgeries were with their many complications, how long it took her to heal, and how that decreased her stamina, impacted her finances, and ultimately drove her into a depression. She cited her visit to a doctor in January of 2011, where she recounted her high stress levels and depression. Her release to work in October 2010 was by a nurse and not her surgeon, and it did not address the effect of her ongoing depression, Plaintiff asserted. Accordingly, the ALJ erred

---

[2] The ALJ gave "little probative weight" to the assessments of state agency medical consultants who reviewed the evidence, because they were not privy to information the ALJ received at the hearing, including Plaintiff's testimony that she returned to part-time and full-time work in 2011. R. 14. Instead, the ALJ cited reports by Plaintiff's treating physicians, which included their documentation of Plaintiff's own statements about her condition. R. 14.

4

in finding Plaintiff's complaints of disabling depression and severe pain less than credible, because those complaints were supported by objective medical evidence.

The Commissioner's motion for summary judgment counters that substantial objective medical evidence supports the ALJ's determination that Plaintiff was not disabled for the claimed period, and his decision to find Plaintiff's accounts of her pain and limitations less than credible. First, it does not matter that a nurse practitioner, rather than Plaintiff's surgeon, released her to full activity in October 2010 – the ALJ can use such evidence to evaluate the severity of a claimant's impairments and the claimant's ability to work. Def.'s Mot. for Summ. J. 7 (citing 20 C.F.R. §§ 404.1513(d), 416.913(d)). Second, although the ALJ considered Plaintiff's testimony, the objective medical evidence belied her assertions of the severity of her impairments. Her physical condition began improving within a couple months of her surgery, as noted consistently by her treating physician and other medical personnel. Plaintiff focused much on the effects of her depression, Defendant argued, but she did not and could not argue her depression caused significant functional limitations. Reports by her doctors throughout her treatment noted she suffered from some depression and had been prescribed medication, but did not indicate it was severe or impaired her ability to function – and no reports indicate Plaintiff told them otherwise. Given all this evidence, the ALJ appropriately found Plaintiff's testimony about the severity of her pain and the amount it impaired her activities to be less than credible.

### C. The Magistrate Judge's Report and Recommendation

Magistrate Judge Robert S. Ballou recommends denying Plaintiff's motion for summary judgment, and granting the Commissioner's motion. In his R&R, the Judge Ballou addressed Plaintiff's contentions that the ALJ erred by improperly evaluating her medical records and complaints of pain and by improperly finding her less than credible. Judge Ballou comprehensively reviewed Plaintiff's prior work history, claim history, the medical evidence on

record before the ALJ, Plaintiff's testimony at the hearing, and the ALJ's findings. The R&R extensively details Plaintiff's psychological history as well, and notes:

> [T]here is no documentation of any kind describing any effect the depression may have had on Saunders's ability to work. There is simply no objective medical evidence in the record to indicate that Saunders's depression had more than a minimal effect on her ability to perform basic work activities.

R&R 8.

Considering that alongside the medical evidence that physical symptoms from Plaintiff's surgery had been mostly alleviated at least by October 2010,[3] Judge Ballou found substantial evidence supported the ALJ's findings. Judge Ballou also found the ALJ properly evaluated Plaintiff's credibility, especially given that medical reports either lacked support for her assertions or contradicted them from June 2010 until April 2011. R&R 9–12. The ALJ cited medical evidence finding improvement in Plaintiff's physical condition from June 2010 onward and the lack of any medical opinion that she could not work from October 2010 onward. R&R 11. Magistrate Judge Ballou found that the medical evidence: (1) showed improvement and lack of significant physical impairments from June 2010 onward, (2) cleared Plaintiff for work in October 2010, and (3) lacked any indication of depression or its effects on Plaintiff's ability to work from at least June 2010 until January 2011. This constituted substantial evidence supporting the ALJ's determinations, concluded Magistrate Judge Ballou.

## II. STANDARD OF REVIEW

A reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard. *See* 42

---

[3] Plaintiff takes issue with the R&R's characterization of the medical records as indicating "that by may 21, 2010, her pain was well-controlled." R&R 8. Instead, Plaintiff says, she was readmitted to the hospital from May 27 to May 28, 2010 for urinary tract infection, gastrointestinal reflux disease, and chest pain. Regardless, Plaintiff was discharged on May 28, 2010 with "much improvement," and throughout June 2010, her improvement proceeded until she was approved to return to work without restriction in October 2010. R. 335, 756.

6

U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Substantial evidence is not a large or considerable amount of evidence. *Pierce v. Underwood*, 487 U.S. 552, 555 (1988). Rather, it comprises "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)), and "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966).

In determining whether the ALJ's decision was supported by substantial evidence, a reviewing court may not "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment" for that of the ALJ. *Craig*, 76 F.3d at 589 (citation omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Secretary (or the Secretary's designate, the ALJ)." *Id*. (quoting *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987)). "Ultimately, it is the duty of the [ALJ] reviewing a case, and not the responsibility of the courts, to make findings of fact and to resolve conflicts in the evidence." *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Thus, even if the court would have made contrary determinations of fact, it must nonetheless uphold the ALJ's decision, so long as it is supported by substantial evidence. *See Whiten v. Finch*, 437 F.2d 73, 74 (4th Cir. 1971). Ultimately, the issue before this Court is not whether Plaintiff is disabled, but whether the ALJ's determination is reinforced by substantial evidence, and whether it was reached through correct application of the law. *Craig*, 76 F.3d at 589.

## III. DISCUSSION

### A. ALJ's Evaluation of Medical Records and Severity of Impairment

Plaintiff argues that Magistrate Judge Ballou erred in finding substantial evidence to support the Commissioner's conclusion that the medical evidence showed her impairment was not severe for the requisite period. Plaintiff's arguments essentially ask this Court to re-weigh the evidence and come to a different conclusion than the ALJ. That is not the function of this Court. Substantial evidence clearly supports the ALJ's finding that Plaintiff's impairment was not severe for the entire claimed period of March 25, 2010 through April 20, 2011.

Plaintiff certainly underwent difficult surgeries and a painful and prolonged stay in the hospital. Plaintiff resided in two different hospitals and underwent three different surgeries from March 25, 2010 until May 24, 2010, when she was released. R. 241, 255, 356–58. As Magistrate Judge Ballou noted, by May 24, 2010, Plaintiff could tolerate a regular diet, walk, and have bowel movements. Her pain was controlled with medication, and she was discharged in stable condition. R. 357. As Plaintiff notes in her Objections, she was readmitted to the hospital from May 27 to May 28, 2010, complaining of chest and abdominal pain, among other things. R. 327–52. An ultrasound revealed a distended abdomen filled with sludge, which the doctors diagnosed as gastrointestinal reflux disease related to her operations. R. 334–35, 724. A chest x-ray revealed no acute disease. R. 335. Plaintiff was diagnosed with chest pain, a urinary tract infection, and gastrointestinal reflux disease, and discharged "[w]ith much improvement" on May 28, 2010. R. 335.

From June 3, 2010 onward, reports from Plaintiff's treating physician, Dr. Sandy Fogel, indicated steady improvement – so much so, that as of October 25, 2010, she was cleared to work "with no restrictions". R. 756. On June 3, 2010, Dr. Fogel told Plaintiff to increase her

diet and activity as she saw fit. R. 695–97. On June 14, 2010, Dr. Fogel examined Plaintiff and noted improvement in her physical symptoms, including lack of distention and tenderness in the affected area, that Plaintiff moved well, and that both her wounds had closed. R. 697. Although Plaintiff complained of "food sitting in stomach," Dr. Fogel found it was likely just the result of a shrunken stomach and the use of a feeding tube during her time in the hospital. R. 697. Plaintiff was told to switch to small meals and follow up on June 24, 2010. R. 297.

On June 24, 2010, Fogel found further improvement. At that time, Plaintiff denied problems with her bowel or bladder, denied pain or discomfort, noted energy improvement, and was found to be eating better, although not quite back to normal. R. 698–99. Dr. Fogel noted Plaintiff's wounds were "well healed" and instructed Plaintiff to increase her diet and activity as she saw fit. R. 699. Then, on October 20, 2010, a nurse practitioner at that same clinic cleared Plaintiff to return to work with no restrictions as of October 25, 2010. R. 756. From this substantial evidence, the ALJ properly concluded that Plaintiff's impairments did not last until April 2011.

Plaintiff takes issue with characterizing her status as steadily improving, noting she again reported to her doctor in January 2011 and was diagnosed with bacterial vaginosis and depression, and was prescribed Lexapro. R. 717, 721. Plaintiff denied fever, abdominal pain, urinary symptoms, or suicidal thoughts. R. 717. She points out that she told her medical professionals at the time about the considerable stress she suffered from losing her home and job and about how she cried frequently and occasionally felt helpless. R. 717. But as the Commissioner pointed out in her motion for summary judgment, Plaintiff does not and cannot argue that her depression severely impaired her ability to function until April 2011.

9

One can easily understand how Plaintiff's ordeal, including her long and difficult hospital stay, her recovery, and her financial difficulties, could lead to stress and even depression. Plaintiff testified before the ALJ about the effects of this stress and depression. But substantial medical evidence, including Plaintiff's own descriptions of her condition, supports the ALJ's finding that she did not remain severely impaired until April 2011. Plaintiff reported suffering depression during her stay in the hospital[4] and again in January 2011, but each time her condition improved with medication, and at no time did she or her doctors describe her depression as debilitating or even a significant impairment on her ability to work.

During Plaintiff's stay in the hospital, she was diagnosed with depression related to her surgery: on April 13 and 28, 2010, with "adjustment disorder with depressed mood," and on May 5, 2010, with major depression secondary to general medical condition. R. 379, 389. But even on those dates, the doctors noted her mood was "mildly depressed" or "fair," that Plaintiff denied feeling "down in the dumps, hopeless, helpless, or worthless," reported "fair energy and concentration," said she was "fairly coping with her medical crisis," and that she had a "linear and goal oriented" thought process with "no evidence of paranoia or delusions," with "fair" insight and judgments and "grossly intact" cognition. R. 379. On Zoloft, she reported "a better mood, better energy and concentration levels," having slept well, and presented as "pleasant and cooperative." R. 387–89. On May 28, before her last discharge from the hospital, Dr. Garri reported her physical examination was negative for depression. R. 328.

After that, there have been two record indications of Plaintiff's depression: (1) her testimony at the hearing before the ALJ, and (2) her diagnosis of depression on January 14, 2011. On January 14, Plaintiff denied suicidal thoughts, was prescribed Lexapro, and was

---

[4] Defendant's motion for summary judgment cites a psychiatric consult at Roanoke Memorial Hospital by Dr. Kavuru on June 16, 2010. It appears this visit actually occurred on April 13, 2010, while Plaintiff was still in the hospital. R. 376.

10

instructed to return in two weeks for re-evaluation. R. 717. She refused counseling, saying she could not afford it. R. 717. On February 18, 2011, she returned to work part-time as a cashier at Apple Market, where she did not have to take out the trash, stock the cooler, or mop the floors, but was not allowed more frequent breaks or other special treatment as compared to other employees. R. 24–31. This work required that she stand for long periods of time. R. 27–28. In her testimony before the ALJ, Plaintiff noted she continued to suffer from depression, and that she had been seeing a counselor and taking medication for it. R. 24-31.

As Magistrate Judge Ballou found, substantial evidence supports the ALJ's finding that Plaintiff was not disabled for the requisite period. Her physical symptoms improved to the point where she was released to normal work by October 2010, and her depression was not debilitating from that point until April 2011. Taken in combination, her remaining physical limitations and depression did not constitute severe impairments until April 2011. Contrary to Plaintiff's arguments, the ALJ properly evaluated the medical evidence and her testimony, and came to the substantially-supported conclusion that she was not disabled under the Act.

### B. The ALJ's Credibility Assessment

Plaintiff also contends Judge Ballou erred in concluding substantial evidence supports the ALJ's determination that Plaintiff's statements concerning her limitations were not fully credible and are inconsistent with the medical evidence on record. Plaintiff alleged her physical recovery from the surgery, combined with her depression, were severe until April 2011 and prevented her from engaging in substantial gainful activity. It is not the role of this Court to determine whether Plaintiff's testimony was fully credible. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Rather, the question for the Court is whether the ALJ applied the proper legal standard in

assessing Plaintiff's credibility, and whether the ALJ's decision is supported by substantial evidence. *Id.*

The ALJ determines whether a claimant is disabled by a two-step process. *Id.* at 594; *see* SSR 96–7p, 1996 WL 374186, at *2 (July 2, 1996). First, the ALJ must find "objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities, and which could reasonably be expected to produce the pain or other symptoms alleged." *Craig*, 76 F.3d at 594 (quotations and emphasis omitted). If such evidence is found, the ALJ must then evaluate "the intensity and persistence of the claimant's [symptoms], and the extent to which [they] affect[ ] her ability to work." *Id.* at 595. Among other factors, when evaluating the claimant's credibility the ALJ should consider all evidence in the record, including "[d]iagnosis, prognosis, and other medical opinions provided by treating or examining physicians or psychologists." SSR96–7p, 1996 WL 374186, at *5. The ALJ's determination "must contain specific reasons" that "make clear to the individual and to any subsequent reviewers the weight the [ALJ] gave to the individual's statements and the reasons for that weight." *Id.* at *4.

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms. However, the ALJ determined that Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not credible, to the extent that they were inconsistent with the ALJ's finding that Plaintiff's impairment was not severe for the entire period. R. 13–14. Plaintiff asserts the ALJ did not properly make this credibility determination under SSR 96-7p by "not providing [a] specific rationale for his credibility finding," including failing to discuss which of Plaintiff's statements were credible, and which were not. Objections to the R&R 3.

Although his reasoning was somewhat terse, the ALJ sufficiently explained his credibility determination as based on the extensive medical evidence on record about Plaintiff's ability to return to work. R. 13–14. Ultimately, after hearing Plaintiff's testimony in person and reviewing all the medical evidence, the ALJ found Plaintiff's "subjective allegations are credible only to the extent consistent with" the medical opinions on record, none of which "suggest[ed] that she was unable to [return to work] earlier" than she did. R. 14.

The ALJ applied the proper legal standard, and I will not re-weigh the evidence or disturb his credibility finding. Therefore, as enumerated above, I find that substantial evidence supports the ALJ's finding that Plaintiff is not disabled within the meaning of the Act.

### IV. CONCLUSION

After undertaking a de novo review of those portions of the R&R to which Plaintiff objected, I find that substantial evidence supports the ALJ's conclusions. Accordingly, I will enter an order overruling Plaintiff's Objections, adopting the Magistrate Judge's R&R in full, granting the Commissioner's Motion for Summary Judgment, denying Plaintiff's Motion for Summary Judgment, and dismissing and striking this action from the active docket of the Court.

The Clerk of the Court is hereby directed to send a certified copy of this Memorandum Opinion and the accompanying Order to all counsel of record, and to United States Magistrate Judge Robert S. Ballou.

Entered this 10th day of March, 2014.

NORMAN K. MOON
UNITED STATES DISTRICT JUDGE